IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER,

                Plaintiff,         Case No. 3:07 cv 270

  -vs-

                                          MEMORANDUM OPINION

SWISS RE LIFE & HEALTH
AMERICA, INC., et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the Defendants' Motion to Dismiss and for More Definite Statement (Doc. 17), Plaintiff's Opposition (Doc. 34), Defendants' Reply (Doc. 39), and Plaintiff's Surreply (Doc. 51). The Court notes diversity jurisdiction under 28 U.S.C. §1332 and proper venue under 28 U.S.C. §1391.

The Court will require Plaintiff to file an amended complaint. Further, the Court finds that Plaintiff has stated a case for piercing the corporate veil in order to assert claims against defendant Swiss Re Life & Health America, Inc. ("Swiss Re"). Also, the Court will not dismiss Plaintiff's conspiracy claim under the so-call "intra-corporate conspiracy" doctrine. Finally, the Court finds that Count XIII of Plaintiff's complaint succeeds at stating a claim for abuse of process under Ohio law.

**I. BACKGROUND**

This case is one piece of satellite litigation orbiting the decade-long receivership of two viatical operations. *Liberte Capital Group v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio). Plaintiff, the Receiver from that case, has sued a variety of insurers who have refused payment or return of premiums. In this case, Plaintiff asserts rights under approximately one hundred policies

against a group of insurers and the parent corporation of all but one of those insurers (Swiss Re wholly owns defendants Southwestern Life Insurance Co. ("Southwestern"), Reassure America Life Insurance Co. ("Reassure"), and Valley Forge Life Insurance Co. ("Valley Forge"), but not defendant Continental Assurance Co. ("Continental"))[1]. Plaintiff is an Ohio resident, Swiss Re is a Delaware corporation and none of the other defendants reside in Ohio.

Plaintiff's suit alleges concerted action to uniformly deny any and all claims arising under policies held by the Receivership without regard to whether they were procured through fraud, breach of a number of the policies as well as fiduciary duty, and Defendants' unjust enrichment. Plaintiff requests damages, declarations that policies are valid, and recision of fraudulent policies (with return of premiums). Finally, Plaintiff is suing Defendants over a satellite lawsuit, initiated in Delaware, found by this Court and the Sixth Circuit to violate this Court's orders regarding satellite litigation. *Liberte Capital Group v. Capwill*, 462 F.3d 543 (6th Cir. 2006).

In the time since the last filing under consideration (Plaintiff's Surreply in early 2008), a number of pertinent legal events have occurred. Between 2008 and 2009, the Court considered Defendants' Motion for Reconsideration and Modification in the Receivership action with regard to their ability to pursue their rights in that case. *Liberte Capital Group v. Capwill*, 630 F.Supp.2d 835 (N.D. Ohio 2009). In addition, another piece of satellite litigation decided a piece of Ohio law which may affect Plaintiff's recision and unjust enrichment claims. *Wuliger v. Manufacturers Life Ins. Co. (USA)*, 567 F.3d 787 (6th Cir. 2009) ("*ManuLife*"). Finally, the Supreme Court has

---

[1] Plaintiff asserted that Continental was a subsidiary of Swiss Re in its complaint, but Defendants denied that relationship in both of its filings under consideration here (Docs. 17 & 39).

twice spoken with regard to pleading standards since Defendants first moved for partial dismissal. *Ashcroft v. Iqbal*, 129 S.Ct. 1937(2009)*; Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Defendants' moved for partial dismissal. They claim that Swiss Re should be completely dismissed by attacking Plaintiff's attempt to pierce the corporate veil (and as part of an attack on Plaintiff's conspiracy count, despite admitting the possibility of a conspiracy involving Swiss Re and Continental), that Count I should be dismissed to the extent it alleges a conspiracy between parties not capable of acting independently,[2] and that Count XIII should be dismissed as either an improper contempt claim or for failing to state a claim under Ohio abuse of process law. They also ask the Court to order Plaintiff to file a more definite statement.

## II. STANDARDS OF REVIEW

*A. Motion to Dismiss*

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007); *Thurman v. Pfizer, Inc*., 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

---

[2] Defendants call this the "intra-corporate conpiracy" doctrine, though there is some dispute over that title.

3

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

*B. Abuse of Process*

Under Ohio law, the tort of abuse of process requires a plaintiff "satisfy three elements: '(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.'" *Robb v.*

4

*Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994). Ohio distinguishes abuse of process from malicious prosecution in two ways important to this case. First, abuse of process requires probable cause for the suit and malicious prosecution requires a lack thereof. *Id.* at 13-14. Second, abuse of process does not share the requirement of some seizure of plaintiff's person or property as required by malicious prosecution. *Id.*

### III. ANALYSIS

*A. Motion for a More Definite Statement*

Plaintiff filed his complaint over four years ago and most of the briefing in this case is over three years old. This case has been delayed by developments within the Receivership action, one of which required action by the Sixth Circuit in regard to the dispute underlying Plaintiff's abuse of process claim. The parties also spent a considerable amount of time attempting to mediate their differences, the process of which was further delayed by a motion for reconsideration following a Sixth Circuit decision. *Liberte*, 630 F.Supp.2d at 837.

Further, several aspects of the law pertinent both to Plaintiff's complaint and to Defendants' motion have changed in the interim. The Supreme Court altered pleading standards in *Iqbal* and *Twombly* and neither the complaint nor the motion briefings address this change. In addition, both this Court and the Sixth Circuit have made pronouncements regarding portions of the claims involved in the Complaint since 2008. In addition, in his surreply, the Plaintiff has presented a deposition which could have a significant effect on his claims, but which the Court cannot consider at this stage.

5

Without even considering Defendants' arguments, due to the passage of time and the events which occurred during that period of time, the Court will order the Plaintiff to file an amended complaint. Even though the Court did not rely on Defendants' arguments in ordering a new pleading, Plaintiff should consider several points raised by those arguments, as well as the new pleading standards announced by the Supreme Court.

While the Court understands that the Plaintiff is not in a position to know about certain things prior to discovery, the length of the Complaint is no excuse to omit any information he possesses. Plaintiff also opposed the Motion for a More Definite Statement on the ground that he does not yet have complete knowledge about what Defendants have done with regard to many of the policies. This claim is no excuse for Plaintiff to fail to describe all of the actions of which he has been informed. In other words, Plaintiff should describe all the actions he has taken and all of the actions of the Defendants of which he has been informed. While discovery might have been an excuse for opposing a motion involving only such defects, Plaintiff will be amending his pleading anyway and should include all of the information he has at this point. Also, Plaintiff should be certain to comply with any particular pleading standards for any specific claims.

*B. Piercing the Corporate Veil*

The parties agree that Ohio choice of law governs which substantive law applies to the question of piercing the corporate veil, but disagree as to whether the result would be Ohio or Delaware law. Both states employ a similar structure and the parties only disagree on the particulars of one element of the claim.

Unlike Delaware, Ohio has clear, unified precedent on piercing. Ohio applies a three part test: "'(1) control over the corporation by those to be held liable was so complete that the

6

corporation has no separate mind ... (2) control ... was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control.'" *Dombroski v. Wellpoint, Inc.*, 895 N.E.2d 538, 543 (Ohio 2008) (quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993)).

Delaware law, on the other hand, has no single, well enunciated test. In fact, Delaware has at least two separate lines of cases describing the second element of the *Belvedere* test and each side has adopted one of these lines. Swiss Re relies on one statement by the Delaware Superior Court (one of Delaware's trial level courts) and several federal courts to claim that Delaware requires use of the corporate form to commit a fraud. *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666 (6th Cir. 2006); *LaSalle Nat'l Bank v. Perelman*, 82 F.Supp2d 279 (D.Del. 2000); *Outokumpu Eng'g Enters., Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724 (Del. Super. Ct. 1996); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260 (D.Del. 1989). Because the parties only contest this element of piercing the corporate veil, this bit of Delaware law is the same as the second element of the *Belvedere* test, and Plaintiff can satisfy this higher test, the Court need not address the choice of law question. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (Ohio 2006).

Though Plaintiff invokes a line of cases from the Delaware Chancery Court (Delaware's other trial level court) implying a relaxed fraud requirement, his allegations satisfy the heightened fraud requirement Swiss Re asserts. *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch.1992) (requires fraud *or* instrumentality for piercing). Plaintiff asserts that Defendants planned to accept premiums on policies they thought were void without informing Plaintiff of that belief

7

and that this resembles an example from Ohio where the *Belvedere* test was satisfied. *Upperman v. Grange Indem. Ins. Co.*, 842 N.E.2d 132 (Ohio C.P. 2005). In *Upperman*, the defendants accepted premiums they knew they were not entitled to collect due to an improperly filed rate structure. *Id.* at 138. The court further held that the parent of the two insurers who issued the policies could be held liable under *Belvedere* due to allegations that the parent directed the underlying fraudulent activity. *Id*. at 138-39. In other words, *Upperman* stands for the proposition that a parent of insurance companies directing actions like those alleged here (acceptance of undeserved premiums) may be exercising control over a subsidiary in such a way as to commit a fraud.

Swiss Re's only attempt to distinguish the situation alleged by Plaintiff from that alleged in *Upperman* is to point to a letter mentioned as evidence of the direction by the parent corporation. Doc. 39 at 11. Swiss Re's emphasis on the letter is unpersuasive - the letter was merely evidence for the underlying assertion that satisfied the *Belvedere* test. Plaintiff will have to present evidence that Swiss Re directed the underlying fraud of accepting undeserved premiums, but a letter with uncertain heading was only one way of demonstrating the act of the parent. In other words, the letterhead which did not distinguish between parent and subsidiary was not the fraud sufficient to pierce the corporate veil, but merely evidence of such fraud. *Upperman*, 842 N.E.2d at 139 ("could support a finding that Grange ... itself made the decision"). Thus, even under the test asserted by Swiss Re, Plaintiff has sufficiently stated a claim for piercing the corporate veil under either Ohio or Delaware law.

*C. Conspiracy*

8

Defendants ask the Court to dismiss Count I to the extent it alleges a conspiracy between Swiss Re, Southwestern, Reassure, and Valley Forge under the theory that there can be no conspiracy without multiple actors. They claim that "for conspiracy purposes," a parent and subsidiary cannot conspire. Doc. 17 at 7. For this proposition, they rely on cases specific to federal anti-trust litigation under the Sherman Act and cases applying the law of specific jurisdictions other than Ohio. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 (1984) (restricting the scope of the decision to "§ 1 of the Sherman Act"); *Nurse Midwifery Assocs. v. Hibbertt*, 918 F.2d 506, 612 (6th Cir. 1990) (dicta not related to the decision stating that parents and wholly owned subsidiaries cannot conspire "for purposes of section 1 of the Sherman Act"); *Norkol/Fibercore, Inc. v. Grubb*, 279 F.Supp.2d 993, 1000 (E.D. Wis. 2003) (parent and subsidiary cannot conspire under Wisconsin law); *Gov't Guar. Fund of the Republic of Finland v. Hyatt Corp.*, 955 F.Supp. 441, 456-57 (D.V.I. 1997) (applying Virgin Islands conspiracy law); *MacNealy v. Dayton Osteopathic Hosp., Inc.*, 1993 WL 1377513 at *5 (S.D. Ohio) (concerning §1 of the Sherman Act). The civil conspiracy claim in Count I involves Ohio law, not federal law. The only cases Defendants cite on Ohio conspiracy law involve the inability of a corporation to conspire with its agents or employees. *Harris v. City of St. Clairsville*, 2006 WL 3762134 at *7 (S.D. Ohio) ("There can be no conspiracy between a municipality and its own agents or employees"); *Schrock v. D & N Dev., Inc.*, 1995 WL 495488 at *2 (Ohio Ct. App.) ("a corporation cannot conspire with a corporate agent").

Thus, under Ohio law, the key trait for the unity of action required to defeat a conspiracy under the doctrine is not being a subsidiary, but being an agent. Neither side has alleged that Southwestern, Reassure, or Valley Forge acted as agents of Swiss Re in the conspiracy Plaintiff

9

alleges. Rather, Plaintiff alleges that all four, along with Continental,[3] acted under Swiss Re's "orchestra[tion]."[4] Though Defendants could argue that such a claim implies agency sufficient to defeat conspiracy, they have not done so yet. Further, Plaintiff could have defended Count I as also including an attempt at imputing action to Swiss Re under an agency theory, but he did not. Because no party has claimed that Southwestern, Reassure, or Valley Forge acted as agents of Swiss Re with regard to the conspiracy proposed in Count I, the Court will dismiss no portion of the Count under Defendants' so-called "intra-corporate conspiracy" doctrine. Of course, should Plaintiff succeed at piercing the corporate veil of those defendants, the control element of that claim will negate any separate action required for a conspiracy claim.[5]

*D. Abuse of Process*

Defendants' attack Count XIII by claiming that either the claim should have been brought as a motion for contempt in the Receivership action or that it fails to state a claim for abuse of process under Ohio law. Count XIII claims that Southwestern, Reassure, and Valley Forge filed a suit in a Delaware court in violation of a Receivership injunction in order to obtain some coercive effect on Plaintiff's collection attempts.

Defendants rest their first argument on the idea that a claim involving a violation of an injunction may only be prosecuted as a claim for contempt. They attempt to expand the principle

---

[3] Defendants have not asserted that Swiss Re, Southwestern, Reassure, and Valley Forge could not conspire with Continental and thus have not challenged that portion of Count I.

[4] The language used is ambiguous as compared to "at Swiss Re's behest," for example.

[5] This holding is possible at the dismissal stage because the Court is only dealing with whether Plaintiff has stated a case. Thus, Plaintiff may state two cases which conflict and survive dismissal, even if success on the one precludes success on the other at a later stage.

that a court has exclusive jurisdiction <u>for contempt</u> of its orders to exclusive jurisdiction over any claim involving non-compliance with its orders. For this proposition, they generally rely on cases expanding a courts reach to contempt of its orders or restricting <u>contempt</u> claims from separate courts. *Lehman v. Krentler-Arnold Hinge Last Co.*, 248 U.S. 448, 452 (1932) (expanding jurisdiction to reach contempt of the same court, even jurisdiction otherwise unsatisfied); *Waffenshmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985) (contempt must be in same court); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 399 (D.R.I. 1998) (*if* actions are not a separate action, the appropriate remedy is a motion for contempt in original court). Defendants' argument and authority do not persuade this Court that Plaintiff may not bring an action for abuse of process merely because the claimed abusive use of process violated an order in the Receivership action.[6]

      Defendants also attack Plaintiff's presentation of a claim for abuse of process under the *Robb* standard. They assert that Plaintiff has failed to satisfy the requirement that the proceeding be "perverted to attempt to accomplish an ulterior purpose for which it was not designed." *Robb*, 662 N.E.2d at 14. They rely on language from the case preceding *Robb* which stated that bad intentions and process alone do not establish abuse of process without something more. *Yaklevich,* 626 N.E.2d at 118 n.2. They argue that the "something more" requires a "further act." *Kensington Land Co. v. Zelnick*, 706 N.E.2d 1279, 1287 (Ohio C.P. 1988) (quoting *Clermont Envtl. Reclamation Co. v. Hancock*, 474 N.E.2d 357, 361 (Ohio 1984)).

---

[6] Further, the Defendants have not persuaded the Court it would be unable to address a contempt of the Receivership order at issue, since this Court issued that order. In fact, the Court has partially addressed that contempt within the Receivership action already in ordering the dismissal of the Delaware lawsuit.

11

However, under current Ohio law, the perversion requirement is satisfied "where someone attempts to achieve through use of the court that which the court itself is powerless to order," and "in an abuse of process case, '[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself.'" *Robb*, 662 N.E.2d at 14 (quoting Prosser & Keeton on Torts (5 Ed. 1984)). Here, Plaintiff clearly alleged that Southwestern, Reassure, and Valley Forge initiated the Delaware suit in order to coerce Plaintiff to abandon collection attempts, an action the Delaware court could not order because of this Court's order in the Receivership action.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied (Doc. 17). Defendants' More Definite Statement is granted (Doc. 17). Plaintiff is granted to March 8, 2011 to file an amended complaint.

IT IS SO ORDERED.

      s/ *David A. Katz*
      DAVID A. KATZ
      U. S. DISTRICT JUDGE